IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00653 SOM-8 |
| Plaintiff, | ) ) | ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |
| vs. | ) ) | |
| JULIUS MITCHELL, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

In May 2015, this court sentenced Defendant Julius Mitchell to 188 months of imprisonment and five years of supervised release. *See* ECF No. 387. Mitchell had entered a guilty plea pursuant to a plea agreement with respect to one count of conspiring to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846. *See* ECF Nos. 228, 229, 235. Mitchell was responsible for 907.2 grams of generic methamphetamine. Mitchell was sentenced as a career offender. *See* Pretrial Investigation Report, ECF No. 397, PageID #s 1583-84, 1593; ECF No. 388 (adopting Pretrial Investigation Report).

Mitchell's lengthy criminal history began with crimes involving violence when he was 16. He had adult convictions involving drugs, stolen cars, firearms, and assault. *See* ECF No. 397.

Mitchell is incarcerated at USP Lompoc, in Lompoc, California.  He has a projected release date of February 2, 2030 *See* https://www.bop.gov/inmateloc/ (input Register Number 86508-022) (last visited October 28, 2020).  Mitchell has been detained in this case since December 2013, or about 82 months. *See* ECF No. 135.

USP Lompoc houses 1,206 inmates, with 895 at the USP, 106 at the North Camp, and 205 at the South Camp.  *See* https://www.bop.gov/locations/institutions/lom/ (last visited October 28, 2020).  USP Lompoc and its two camps have had 148 inmates and 24 staff members recover from COVID-19.  Two inmates have died.  *See* https://www.bop.gov/coronavirus/index.jsp (last visited October 28, 2020).  As of the morning of October 28, 2020, there are no inmates at USP Lompoc with active COVID-19 cases and only four cases of COVID-19 among staff members.

Mitchell is 49, 303 pounds, and 5' 11", giving him a body mass index of 41.8.  *See* ECF No. 700, PageID # 5048; https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html.  Mitchell's sealed medical records note that he is obese but do not state his height or weight.  *See* ECF No. 697, PageID #s 5027.  His December 2014 Presentence Investigation Report indicates that he was 5'11" and 270 pounds.  *See* ECF No. 397, PageID # 1597.  The Government concedes that Mitchell is likely obese.  *See* ECF No. 694, PageID

2

# 4988. The court therefore assumes that Mitchell is obese for purposes of this motion.

On June 23, 2020, Mitchell tested negative for SARS-CoV-2, the virus that causes COVID-19. *See* ECF No. 697, PageID # 5037; https://www.cdc.gov/coronavirus/2019-ncov/hcp/testing-overview.html (indicating that SARS-CoV-2 is the virus that causes Covid-19) (last visited October 28, 2020).

**II.    ANALYSIS.**

Mitchell's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted

3

his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements. *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

### A. Mitchell Has Satisfied the Time-lapse Requirement of 18 U.S.C. § 3582(c)(1)(A).

Mitchell says he submitted a compassionate release request to his warden in July 2020 but has not received a response. *See* ECF No. 683-1, PageID # 4923. Mitchell submitted another administrative compassionate release request to the warden of his prison on September 18, 2020. *See* ECF No. 683-4, PageID # 4940. While the September request was not submitted more than 30 days before Mitchell filed the present motion, the Government concedes that Mitchell has satisfied the exhaustion requirement, given the passage of time. *See* ECF No. 694, PageID # 4983 ("the Government therefore concedes that Defendant has complied with the administrative exhaustion requirement of 18 U.S.C. § 3582"). Accordingly, this court finds that Mitchell has fulfilled the first requirement of § 3582(c)(1)(A).

B.  **This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. Previously, only the Bureau of Prisons could file such motions for inmates. *See United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020). Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated. This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at

5

odds with the congressional intent behind recent statutory amendments.

As amended by Congress, § 3582(c)(1)(A) states that a court's conclusion that extraordinary and compelling circumstances warrant a reduction in sentence must be consistent with any *applicable* policy statements issued by the Sentencing Commission. But following the First Step Act's amendments to § 3582(c)(1)(A) in 2018, the Sentencing Commission did not adjust its statements to make them consistent with the statutory amendment allowing prisoners themselves to bring motions for compassionate release. Instead, the Sentencing Commission has left in place statements premised on the Bureau of Prisons' exclusive authority to bring compassionate release motions. This court reads such statements as inapplicable to motions brought directly by prisoners. This court's exercise of discretion is consistent with the statutory amendment and at least the spirit of the Sentencing Commission's approach. *Mau*, 2020 WL 6153581; *Kamaka*, 2020 WL 2820139, at *2-3.

This court reads Application Note 1 to section 1B1.13 of the Sentencing Guidelines, which relates to compassionate release motions, as providing that extraordinary and compelling reasons warrant early release under any of four circumstances: if "(1) the defendant suffers from a terminal illness and certain other conditions are met; (2) the defendant suffers from a

physical or mental condition that 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;' (3) certain family circumstances justify compassionate release; or (4) '[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, [the first three categories of reasons].'" *Kamaka*, 2020 WL 2820139, at *2 (quoting U.S.S.G § 1B1.13, Application Note 1). Crucially, the final "catch-all" category applies only to the situation in which the Director of the Bureau of Prisons has made the required determination relating to compassionate release.

That "catch-all" made sense when only the Director of the Bureau of Prisons could bring a compassionate release motion. The Sentencing Commission anticipated that the Director of the Bureau of Prisons, and not the courts, would rely on the four categories:

> A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant [falls under any of the four enumerated categories]. *The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18*

7

> *U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.*

U.S.S.G § 1B1.13, Application Note 4 (emphasis added). In other words, the Sentencing Commission anticipated that the Director of the Bureau of Prisons would file a compassionate release motion whenever it determined that an inmate fell into one of the four enumerated categories of extraordinary and compelling circumstances. Even then, when a court considered the motion, it was expected to exercise discretion (after considering a broad range of criteria, such as the § 3553 factors, the defendant's medical condition, and the defendant's family circumstances). That is, when the Director of the Bureau of Prisons brought a motion to the court, the Sentencing Commission did not intend for the court to be bound by the four enumerated categories. In particular, the Sentencing Commission did not intend for the court to be bound by the Director of the Bureau of Prisons' determination that "other reasons" justified early release.

If courts were indeed bound by the "catch-all" category, and if that category only allowed the Director of the Bureau of Prisons to exercise discretion, then judicial review would be meaningless. Courts would have to determine that extraordinary and compelling circumstances existed every time the Director of the Bureau of Prisons made such a determination.

8

Courts would be nothing more than a rubber stamp. That was not the vision the Sentencing Commission had even under the old scheme. Instead, in noting that a court was in "a unique position to determine whether the circumstances warrant a reduction," the Sentencing Commission was clearly anticipating that courts would independently review such motions. U.S.S.G § 1B1.13, Application Note 4.

In sum, in Application Note 1, the Sentencing Commission reviewed the four categories that the Director of the Bureau of Prisons, not the courts, could consider in bringing motions. Those categories are not "applicable" to compassionate release motions brought by inmates themselves. *See United States v. Brooker*, --- F.3d ---, 2020 WL 5739712, at *4-6 (2d Cir. Sept. 25, 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made.). Even if the commentary applies to motions filed by inmates, a court's exercise of discretion to make the determination formerly made by the Director of the Bureau of Prisons is consistent with the Sentencing Commission's understanding of the scope of a court's authority over the ultimate compassionate release decision. *Accord Mau*, 2020 WL 6153581; *Kamaka*, 2020 WL 2820139, at *2.

In allowing inmate motions, Congress gave no indication that judicial discretion was more constrained with inmate motions than with Bureau of Prisons motions. It appears that Congress

9

reasonably expected Application Note 1 to be amended or supplemented. That did not occur. Possibly that was because the Sentencing Commission was short commissioners and thus lacked a quorum.[1] As this court has already concluded, the outdated Application Note does not constrain this court's discretion in determining whether extraordinary and compelling circumstances warrant a reduction in a sentence. *See Mau*, 2020 WL 6153581.

### C. Mitchell Has Not Demonstrated That Extraordinary and Compelling Circumstances Justify His Early Release.

According to the CDC, a person's risk of a severe illness (one that may require hospitalization, intensive care, or a ventalator) from COVID-19 increases with age. The CDC website explains that "people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s. The greatest risk for severe illness from COVID-19 is among those aged 85 or older." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited October 28, 2020).

---

[1] It appears that the Sentencing Commission has not had the opportunity to revise the policy statement in response to the First Step Act, because, since the passage of the First Step Act, the Sentencing Commission has had only two voting commissioners. *See, e.g.*, *United States v. Haynes*, 2020 WL 1941478, at *12 n.20 (E.D.N.Y. Apr. 22, 2020). The guidelines cannot be amended until two more voting commissioners are appointed to constitute a quorum. *Id.*

The CDC currently lists the following conditions for people of any age as creating an increased risk of a severe illness from COVID-19:

*Cancer

*Chronic kidney disease

*COPD (chronic obstructive pulmonary disease)

*heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies

*Immunocompromised state (weakened immune system) from solid organ transplant

*Obesity (body mass index [BMI] of 30 kg/m2 or higher but < 40 kg/m2)

*Severe Obesity (BMI = 40 kg/m2)

*Sickle cell disease

*Smoking

*Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited October 28, 2020).

The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

*Asthma (moderate-to-severe)

*Cerebrovascular disease (affects blood vessels and blood supply to the brain)

*Cystic fibrosis

11

    *Hypertension or high blood pressure

    *Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines

    *Neurologic conditions, such as dementia

    *Liver disease

    *Overweight (BMI > 25 kg/m2, but < 30 kg/m2)

    *Pregnancy

    *Pulmonary fibrosis (having damaged or scarred lung tissues)

    *Thalassemia (a type of blood disorder)

    *Type 1 diabetes mellitus

*Id.*

    The CDC notes that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Id.* Given the CDC's guidance and the Government's concession on the issue, this court concludes that Mitchell's obesity places him at an increased risk of a severe illness if he contracts COVID-19, although the extent of that risk is unclear. *See* ECF No. 694, PageID # 4989 (stating, "the Government is willing to concede that Defendant's BMI is at least 30. Therefore, the Defendant would then have an underlying medical condition recognized by the CDC as putting him at an increased risk of severe illness **were he to contract** COVID-19"). Nevertheless, Mitchell's obesity, by itself, is insufficient for

this court to find an exceptional and compelling reason that warrants a reduction in his sentence. *See United States v. Akolo*, 2020 WL 4810104, at *3 (D. Haw. Aug. 18, 2020) ("While this court certainly agrees that Akolo has legitimate concerns about contracting COVID-19, his obesity, standing alone, is not an exceptional and compelling reason that warrants a reduction in sentence.").

The record suggests that Mitchell has not contracted COVID-19. His risk of a severe infection from COVID-19 is tempered by the lack of active COVID-19 cases at USP Lompoc. Early in the COVID-19 pandemic, the virus spread rapidly through the prison. USP Lompoc and its two camps have had 148 inmate and 24 staff members recover from COVID-19, but 2 inmates have died. *See* https://www.bop.gov/coronavirus/index.jsp (last visited October 28, 2020). However, as of the morning of October 28, 2020, USP Lompoc has no active inmate cases of COVID-19 and 4 active staff cases of COVID-19. Presumably, the infected staff members are not coming to work. *Id.*

In a recent case, *United States v. Asuncion*, 2020 WL 6205680 (D. Haw. Oct. 22, 2020), this court analyzed an expert report by Dr. Homer Venters summarizing the current state of the Lompoc complex COVID-19 outbreak. This court's discussion of that report is quoted below. References to the report in the block quote are to the copy of the report filed in *Asuncion*.

13

The report was submitted in a pending case, *Torres v. Milusnic*, No. CV. 20-4450 CBM (C.D. Cal.). Venters filed his report on September 25, 2020, *see* ECF No. 52-1 (copy of report filed in this case), calling the COVID-19 outbreak at the Lompoc complex "one of the nation's most overwhelming." *Id.*, PageID # 345.

What Venters was told by BOP staff sometimes differed greatly from what he was told by inmates at USP Lompoc. For example, according to staff, "100% of chronic care encounters occur withing the prescribed timeframe based on BOP guidelines." *Id.*, PageID # 359. However, inmates reported that chronic care patients "go many months in between encounters, some reporting more than six months since being seen." *Id.*, PageID # 360.

BOP staff painted a picture of following COVID-19 protocols. For example, Venters observed clean common areas and was told that any high risk inmates were placed in single cells. *Id.*, PageID # 357. He was told that new inmates are quarantined and cells are cleaned by inmates between intakes of new inmates. Inmates with such cleaning duties are screened before each shift. *Id.*, PageID # 357-58. Venters was told that, when inmates are quarantined, staff wears personal protective equipment whenever a food slot or door is opened. *Id.*, PageID # 358.

But inmates told Venters that they lacked paper towels. *Id.*, PageID # 359. They also told him that staff "do not wear masks, especially on night and weekend shifts." *Id.*, PageID # 360. Inmates told Venters that common areas are not cleaned regularly and that, when an inmate is identified as potentially having COVID-19, the prison does not clean or disinfect their living space. *Id.* Inmates said that they were threatened by staff for speaking candidly to Venters. *Id.*

14

> Venters did note some positive things the Lompoc complex was doing to address the risks of COVID-19. For example, the facility was screening staff well and had a good hospital unit and screening database. *Id.*, PageID # 362.

*Id.*, 2020 WL 6205680, at *6.

Reading the Venters report as a whole, and considering the lack of any active cases of COVID-19 in USP Lompoc, the court concludes that Mitchell is not in immediate danger of being infected with COVID-19, although the possibility that he will be exposed to the virus in the future cannot be ignored. This court is not discounting what may have been an attempt by the BOP to show Venters better conditions at the prison than usually exist or what may be serious flaws in USP Lompoc's COVID-19 protocols. Nevertheless, Mitchell has not shown that his obesity and susceptibility to COVID-19 are, without more, exceptional and compelling reasons that warrant a reduction of his sentence at this time.

The court also examines factors set forth in § 3553(a). Over and above Mitchell's medical condition and the situation at USP Lompoc, several factors favor release: 1) Mitchell's actions involved a nonviolent drug crime, although other coconspirators carried guns and Mitchell was described as the "muscle," *see* ECF No. 397, PageID # 1579; 2) Mitchell was not a leader with respect to the drug crime; 3) Mitchell made attempts in prison to rehabilitate himself, including taking numerous educational

15

courses, *see* ECF No. 683-6, PageID # 4944; and 4) Mitchell even received a barbering certificate that may allow him to find a job as a barber if released, *see* ECF No. 683-6, PageID # 4947. *Id.* If released, Mitchell plans to live with his wife and their three children in a two-bedroom, two-bathroom townhouse in Kapolei, Hawaii. He says he has a close family friend who will help him to be a barber until he can obtain a security guard certification. *See* ECF No. 683-1, PageID #s 4931-32.

On the other hand, there are several factors suggesting that early release should be denied. Mitchell's lengthy sentence reflected the extensive nature of the drug crime at issue, which involved 907.2 grams of generic methamphetamine, as well as Mitchell's significant criminal history and designation as a career offender. Moreover, some of Mitchell's convictions involved violence. *See* ECF No. 397. *See* ECF No. 53, PageID # 400. This history of violence is obviously concerning. Another concerning issue is the amount of time remaining on Mitchell's sentence. It appears that Mitchell has served less than seven years of his sentence. *See* ECF Nos. 135, 137. Mitchell is not scheduled to be released until February 2, 2030, assuming good-time credit. *See* https://www.bop.gov/inmateloc/ (input Register Number 86508-022) (last visited October 28, 2020). Nor has Mitchell been a model inmate. While his last disciplinary sanction was years ago, in September 2016, it was

16

for fighting.  *See* ECF No. 694-2, PageID # 5010.  Prior to that, Mitchell was disciplined in 2014 for refusing to obey an order.  *Id.*  Mitchell had other prison discipline while incarcerated with respect to other crimes, including discipline in 2001 for fighting.  *Id.*, PageID # 5011.

Under § 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence.  Having considered Mitchell's obesity, as well as the apparent improvement in the situation at USP Lompoc, the time remaining on his sentence, his extensive criminal history and history of violence, his attempts at rehabilitation, his prison disciplinary sanctions, and his release plan, this court concludes that it lacks an extraordinary and compelling reason to reduce his sentence under § 3582(c)(1)(A).

### III.     CONCLUSION.

Mitchell's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, October 28, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Mitchell*, Cr. No. 13-00653 SOM (08); ORDER DENYING MOTION FOR COMPASSIONATE RELEASE